UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
YORVIS SAID PAEZ TORRES,

Petitioner,

v.

JOHN TSOUKARIS, *et al.*,

Respondents.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-06751 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On October 1, 2026, petitioner Yorvis Said Paez Torres ("Petitioner") filed a petition for a writ of habeas corpus against respondents John Tsoukaris, in his official capacity as Newark, New Jersey Field Office Director for United States Immigration and Customs Enforcement ("ICE"), the Warden of Delaney Hall Detention Facility ("Delaney Hall") in his official capacity, Markwayne Mullin, in his official capacity as the Secretary of the United States Department of Homeland Security ("DHS"). *See generally* Petition for Habeas Corpus and Emergency Application for a Temporary Restraining Order, Dkt. 1 ("Petition" or "Pet."). Petitioner seeks his immediate release or, alternatively, a bond hearing, and challenges the lawfulness of his ongoing detention by ICE under the Immigration and Nationality Act ("INA") and the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"). *See id.*

For the following reasons, the Petition is granted.

## BACKGROUND[1]

### A. Petitioner's Entry and Parole

Petitioner is a native and citizen of Venezuela. Pet. ¶ 8. On or about August 19, 2022, Petitioner entered the United States without inspection or parole and was encountered by United

[1] The facts of this case are undisputed unless otherwise indicated.

States Border Patrol at or near Eagle Pass, Texas. Declaration of Arturo G. Delgado ¶ 3, Dkt. 16-1 ("Delgado Declaration" or "Delgado Decl."); Respondents' Letter to the Court (Oct. 27, 2026) at 10, 19-20, Dkt. 16 ("Return").[2] Petitioner was assigned Alien Number ("A Number") 243 021 731. Delgado Decl. ¶ 3; Return at 7. On August 21, 2022, Petitioner was released with a Form I-94 as an "Alternate to Detention" as a Condition of Parole, *see* Delgado Decl. ¶ 4, and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) ("Section 1182(d)(5)(A)") until October 20, 2022. *See* Return at 7-8, 11, 20. According to Petitioner, a Form I-831, dated August 21, 2022, and a Form G-56, dated August 22, 2022, directed Petitioner to report for "Alternatives to Detention" enrollment on October 20, 2022. Pet. ¶ 33. The Form I-831, dated September 15, 2026, submitted by Respondents, states that ERO NYC terminated "Paez-Torres from the ATD program" on October 20, 2022. *See* Return at 20.

On or about March 26, 2023, ICE mailed Petitioner a G-56 Form, Call-in Letter directing him to report for a check-in on September 15, 2026. Delgado Decl. ¶ 7. On August 21, 2023, Petitioner "filed an application with U.S. Citizenship and Immigration Services ('USCIS')," which remains pending, and "USCIS issued Petitioner Alien Number 232 947 709." Delgado Decl. ¶ 5.

Petitioner has been issued government identification documents: (1) on or about May 13, 2024, USCIS issued Petitioner a Form I-766 category (c)(8) Employment Authorization Document, valid through May 12, 2029; (2) on May 14, 2024, the Social Security Administration issued Petitioner a Social Security Card; and (3) on March 4, 2025, the State of Florida issued Petitioner a temporary Class E driver license. Pet. ¶¶ 36-38.

[2] When citing to the Return and exhibits therein, the Court refers to the page numbers contained in the automatically generated ECF header.

On November 30, 2023,[3] Petitioner was arrested by the White Plains Police Department on for "Possession of a Forged Instrument – 2nd Degree in violation of New York Penal Law ("NYPL") § 170.25 and Aggravated Unlicensed Operation of a Motor Vehicle – 3rd Degree in violation of NYPL § 511(1A)." Delgado Decl. ¶ 6; Return at 21. "On April 11, 2024, the White Plains City Court issued a bench warrant for Petitioner" and the charges remain pending. Delgado Decl. ¶ 6.

**B. Petitioner's 2026 Arrest**

On September 15, 2026, ICE arrested Petitioner at his scheduled check-in at 26 Federal Plaza, New York, New York, pursuant to a Form I-200 Warrant for Arrest of Alien. Delgado Decl. ¶ 7; Return at 13, 19-22. During processing that same day, ICE served Petitioner with a Form I-862, Notice to Appear ("NTA"), charging him as inadmissible pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), "as being an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General of the United States of America." Delgado Decl. ¶ 7; Return at 15, 20. The NTA was filed with the Executive Office for Immigration Review ("EOIR") and removal proceedings were commenced against Petitioner. Delgado Decl. ¶ 7.

After processing on September 15, 2026, Petitioner was relocated to Delaney Hall Detention Facility in Newark, New Jersey and was located there until October 1, 2026, when he was transferred Metropolitan Detention Center, in Brooklyn, New York ("MDC"), where he is presently detained. *Id.* ¶ 8. On October 20, 2026, Petitioner appeared at a master calendar hearing at the New York Varick Street Immigration Court and, through counsel, admitted the factual

[3] While Respondents' brief states that the arrest related to the NYPL charges occurred on "November 30, 2022", *see* Return at 1, the Form I-213 states that the date of Petitioner's arrest was November 30, 2023, *see* Return at 21. The Court considers the Return's statement that the arrest occurred on November 30, 2022, as a typographical error.

allegations and conceded removability. *Id.* ¶ 9. An Immigration Court master calendar hearing is scheduled for November 5, 2026, at which Petitioner can file relief applications. *Id.* ¶ 10.

**PROCEDURAL HISTORY**

On October 1, 2026, while Petitioner was believed to be detained in New Jersey, Petitioner filed the Petition in the U.S. District Court for the District of New Jersey. *See generally* Pet. District Judge Katharine S. Hayden issued an order enjoining the removal of Petitioner from New Jersey pending further order of the court. *See* Order, dated Oct. 1, 2026. That same day, Petitioner moved for immediate enforcement of the non-transfer order and, because the ICE Online Detainee Locator listed Petitioner's location at MDC, requested that Petitioner be returned to the District of New Jersey. *See* Petitioner's Emergency Motion to Enforce the Non-Transfer Order and for Immediate Return, Dkt. 3. On October 2, 2026, Judge Hayden ordered that Respondents confirm Petitioner's location by on October 5, 2026, at 12:00 p.m., and, if the Petitioner was no longer in New Jersey, to submit "a declaration from an official with personal knowledge of the events Petitioner's transfer who can attest to the exact time the transfer took place." *See* Text Order, dated October 2, 2026, Dkt. 4. On October 5, 2026, Respondents informed Judge Hayden that Petitioner was booked at MDC at "approximately 11:30 a.m. on October 1, 2026," and requested that the matter be transferred from the District of New Jersey to the Eastern District of New York. *See* Respondents' Letter to the Court (Oct. 5, 2026), Dkt. 6. After initially opposing the transfer, on October 20, 2026, Petitioner affirmatively requested the transfer, and Judge Hayden ordered the transfer on October 21, 2026. *See generally* Petitioner's Response to ECF No. 6, Dkt. 7; Petitioner's Consent to Transfer to the Eastern District of New York, Dkt. 8; Text Order, dated Oct. 21, 2026, Dkt. 9.

On October 22, 2026, the Petition was transferred to this Court, and the Court issued an Order to Show Cause, which ordered, *inter alia*, that Respondents file a return to the Order to

Show Cause explaining why the Petition should not be granted by October 27, 2026, at 5:00 p.m., that the parties appear for a hearing on the Petition on October 28, 2026, at 10:00 a.m., or alternatively indicate that they waive the hearing, and to preserve the Court's jurisdiction pending a ruling on the Petition, Petitioner shall not be removed from the Eastern District of New York until further order of this Court. *See* Order to Show Cause, Dkt. 11 ("Order to Show Cause" or "OSC") (emphasis omitted), Docket Entry, dated Oct. 22, 2026, Dkt. 10.

On October 26, 2026, Petitioner filed a letter informing the Court that the parties waived the OSC hearing and consented to the Court issuing a decision on the Petition based on the written submissions. *See* Petitioner's Letter to the Court (Oct. 26, 2026), Dkt. 14. Accordingly, the Court canceled the OSC hearing. *See* Order, dated Oct. 26, 2026.

On October 27, 2026, Respondents filed the Return, and on October 28, 2026, Petitioner filed Petitioner's Reply to Respondent's Letter Brief, Dkt. 17 ("Reply"). *See generally* Return; Reply.

## LEGAL STANDARD

District courts are empowered "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, 18-CV-4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)).

## DISCUSSION

Petitioner asserts that his continued detention violates the applicable statutory scheme under 8 U.S.C. § 1226(a) ("Section 1226(a)") and 8 U.S.C. § 1225(b), and his due process rights under the Fifth Amendment. *See* Pet. ¶¶ 44-57; *see generally* Reply. In opposition, Respondents

contend that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A) and therefore the Petition should be denied. *See* Return at 2-5. The Court first addresses the statutory basis for Petitioner's detention before turning to his due process claim.

**A. Statutory Basis for Petitioner's Detention**

As this Court has recently held, "noncitizens who are detained after being paroled into the country under Section 1182(d)(5)(A) are subject to the discretionary detention authority of Section 1226, not mandatory detention under Section 1225." *Garcia v. Brown*, 26-CV-05005 (OEM), 2026 WL 2455157, at *2 (E.D.N.Y. Aug. 21, 2026); *see Olivier v. Mullin*, 26-CV-04561 (RER), 2026 WL 2350274, at *2 (E.D.N.Y. Aug. 13, 2026) ("Petitioner has continuously resided in the country since November 2023 and is in active asylum proceedings. When his parole expired on November 3, 2025, and ICE subsequently arrested him, he should have been detained pursuant to section 1226, not section 1225."); *R.M.R. v. Genalo*, 26-cv-04358 (NCM), 2026 WL 2211009, at *3-5 (E.D.N.Y. July 31, 2026) (collecting cases) (rejecting the Government's argument that the petitioner paroled under Section 118(d)(5)(A) was "requesting lawful entry into the United States" because he was "in fact, already in the country, and ha[d] been for multiple years, including several since his parole lapsed in November 2022," and therefore holding "petitioner's detention is 'governed by Section 1226(a), not Section 1225(b)(2)(A)'" (quoting *Barbosa da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026)); *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 401-02 (E.D.N.Y. Nov. 25, 2025) ("Section 1225 applies to 'certain aliens seeking admission into the country,' while Section 1226, in contrast, is a 'default rule' that 'authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289, 303 (2018))); *see also Hernandez Villasmil v. Blanche*, 26-CV-713 (MAD), 2026 WL 1235068, at *4 (N.D.N.Y. May 5, 2026) (collecting cases) ("The majority of federal district courts addressing the issue have concluded . . . that the mandate

in 8 U.S.C. § 1182(d)(5)(A), which requires a noncitizen to be returned to the custody from which he was paroled when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served, requires the petitioner to be treated just as the INA would treat any noncitizen previously granted parole and living in the United States." (quotations omitted)).

In *Barbosa da Cunha*, the Second Circuit held that the phrase "alien seeking admission" under Section 1225(b)(2)(A) referred to "a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is." 175 F.4th at 77. Thus, the "constructively detained" language Respondents cite from *Ibragimov v. Gonzales*, 476 F.3d 125 (2d Cir. 2007) and *Cruz-Miguel v. Holder*, 650 F.3d 189 (2d Cir. 2011), and that the court relied on in *Rana v. Genalo*, 26 Civ. 849 (JPC), 2026 WL 1863815 (S.D.N.Y. June 29, 2026), "ignores the reality that petitioner here is not 'requesting lawful entry into the United States'—he is, in fact, already in the country, and has been for multiple years, including several since his parole lapsed in November 2022." *R.M.R.*, 2026 WL 2211009, at *3; *see O.F.B.*, 810 F. Supp. 3d at 402 (rejecting the "entry fiction" argument because it "dictates what constitutional rights are due to a noncitizen who is physically present in the United States . . . but hasn't been lawfully admitted" and does not speak to "whether he was seeking admission at the time of his detention" (first quoting *J.G.O. v. Francis*, 25-CV-7233 (AS), 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025); and then quoting *Sarmiento Guerrero v. Noem*, 815 F. Supp. 3d 181, 188-89 (E.D.N.Y. Nov. 18, 2025)); *Robles Escalona v. Warden, Mdc Brooklyn*, 26-CV-3920 (AMD), 2026 WL 2018505, at *3 (E.D.N.Y. July 13, 2026) (same).[4]

[4] Additionally, the reasoning in *Ibragimov* and *Cruz-Miguel* was applied in different circumstances and did not address the question of whether Section 1225(b)(2)(A) or Section 1226(a) applied to a detained noncitizen whose parole had expired. *Ibragimov* interpreted 8 C.F.R. § 1.1(q), the precursor to 8 C.F.R. § 1.2, *see Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 306 (E.D.N.Y. Nov. 28, 2025), to hold that, "under valid and unambiguous INS regulations governing the grant of advance parole, petitioner," who had left the United States and re-entered, "was properly treated as an 'arriving alien' and an 'applicant for admission' in removal proceedings once his adjustment-of-status application was denied." *See Ibragimov*, 476 F.3d at 129, 132. And in *Cruz-Miguel*, the court determined that

Accordingly, not only is Petitioner eligible for release on bond, *Barbosa da Cunha*, 175 F.4th at 71, but "Section 1226(a) and 8 C.F.R. 1236.1(c)(8) require ICE officials to make an individualized custody determination" prior to or contemporaneous with the decision to detain. *Arango v. Genalo*, 25-CV-6720 (RER), 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) (citing *Gopie v. Lyons*, 25-CV-05229 (SJB), 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025)). "ICE must allow the noncitizen to 'demonstrate to the satisfaction of the officer that [] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Kelly v. Almodovar*, 25 Civ. 6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (alterations in original) (quoting 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8)).

**B. Due Process**

The Court now turns to Petitioner's argument that ICE's detention of Petitioner violates his due process rights. Petitioner asserts that he has been unlawfully detained since September 15, 2026, without any hearing to contest his ongoing detention, which violates the procedural due process afforded by the Fifth Amendment. Pet. ¶¶ 13, 30, 42-48. Whether Respondents' actions pursuant to Section 1226(a) comported with the principles of due process is governed by the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying *Mathews* to determine the adequacy of process in the context of civil immigration confinement). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest

---

"conditional parole" under 8 U.S.C. § 1226(a)(2)(A)-(B) did not result in "parole[] into the United States," sufficient to confer eligibility for adjustment of status as 8 U.S.C. § 1182(d)(5)(A) does. 650 F.3d at 191, 193-94, 200. In addition to declining to adopt *Rana*'s reasoning, the Court notes that *Rana* is likewise distinguishable because it addressed detention under 8 U.S.C. § 1225(b)(1), not Section 1225(b)(2)(A), the statutory provision at issue here. *See Rana*, 2026 WL 1863815, at *5-6.

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

With respect to the second prong of the *Mathews* test, Respondents' procedure presents a high risk of erroneous deprivation. "The purpose of requiring an exercise of discretion [under Section 1226(a)] prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495 (S.D.N.Y. 2025); *see also id.* at 497 (explaining that ICE must "engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause"). Here, there is no indication that an individualized determination was made as to Petitioner. There is no mention of dangerousness or flight risk in Respondents' supporting ICE declaration, *see generally* Delgado Decl., and Respondents' contention that Petitioner's detention is mandatory further evidences a lack of an individualized determination, *see J.H.F. v. Arteta*, 26 Civ. 4076 (AT), 2026 WL 1724066, at *7 (S.D.N.Y. June 14, 2026) ("[B]ecause the Government (incorrectly) contends that [petitioner's] detention is mandatory, it has made little effort to show that it exercised any discretion when deciding whether [petitioner] should be detained." (quoting *Salgado v. Francis*, 25-CV-6524

(VEC), 2026 WL 915304, at *7 (S.D.N.Y. Apr. 3, 2026))). Petitioner's 2023 arrest for NYPL violations does not alter this assessment, as "mere awareness of pending criminal charges is not sufficient to constitute an individualized determination as to [Petitioner's] flight risk or danger to the community." *Garcia Montalban v. Genalo*, 832 F. Supp. 3d 330, 337 (S.D.N.Y. Mar. 20, 2026) (citing *Kelly*, 2025 WL 2381591, at *3). Accordingly, the risk of erroneous deprivation is high.

With respect to the third *Mathews* prong, Respondents' interest in detaining "individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690). "Here, there was no initial determination as to the need to detain Petitioner as he was presumed subject to mandatory detention under Section 1225(b)(2)(A)," and therefore no "legitimate governmental purpose" was advanced when detaining him. *See D.D.T. v. Maldonado*, 2026 WL 1662730, at *4 (E.D.N.Y. June 9, 2026) (quoting *Inestroza Carbajal v. Frazier*, 26-CV-2778 (SJB), 2026 WL 1309265, at *4 (E.D.N.Y. May 12, 2026); *Olivier*, 2026 WL 2350274, at *2 (holding that "Respondents violated Petitioner's due process rights when ICE detained him without first making an individualized determination as to his dangerousness and flight risk").

Taken together, Petitioner's ongoing detention violates his due process rights. *See Valdez*, 803 F. Supp. 3d at 219. Given the deprivation of Petitioner's liberty, the absence of deliberative

process when he was initially detained, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.[5]

**C. Relief**

Petitioner argues that he is entitled to immediate release or, alternatively, a burden-shifted bond hearing. Pet. at 16. The Court grants Petitioner's request for immediate release. *See Garcia*, 2026 WL 2455157, at *3 (granting the petitioner's request for immediate release after holding that the petitioner was detained pursuant to Section 1226(a), not Section 1225(b)(A)(2), and that he had been detained without an individualized determination in violation of his due process rights). "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also O.F.B.*, 810 F. Supp. 3d at 405 (first quoting *Munaf*, 553 U.S. at 693; and then citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *R.M.R.*, 2026 WL 2211009, at *5 (same).

Here, "no relief short of petitioner's immediate release would be appropriate or sufficient in this case" because "the government's failure to conduct any kind of individualized assessment before detaining him, failure to make any showing of changed circumstances, and failure to provide him with an opportunity to respond—renders any post-deprivation review by an immigration judge inadequate." *R.M.R.*, 2026 WL 2211009, at *5; *O.F.B.*, 810 F. Supp. 3d at 405 (noting that this was especially true because "detention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded" (quoting *Velasco Lopez*, 978 F.3d at 852)); *see Lopez Benitez*, 795 F. Supp. 3d at 497 (waiving the exhaustion requirement and

[5] Because the Court determines that Petitioner's detention violates his due process rights, it need not address his remaining claims. *See, e.g.*, *Valdez*, 803 F. Supp. 3d at 217 n.4 (declining to address remaining claims after determining that the petitioner's detention violated due process).

releasing the petitioner because there was no "initial decision" for the petitioner to "appeal," and "any post-deprivation review by an immigration judge would be inadequate").

**CONCLUSION**

For the foregoing reasons, Petitioner's request for immediate release is granted. When releasing Petitioner, Respondents may not impose additional conditions of release such as electronic or ankle monitoring without an individualized determination. *See Herrera v. Blanche*, 26-CV-03321 (OEM), 2026 WL 1674206, at *5 (E.D.N.Y. June 10, 2026) (citing *Khabazha v. U.S. Immigr. & Customs Enf't*, 25-CV-5279 (JMF), 2025 WL 3281514, at *3 (S.D.N.Y. Nov. 25, 2025) (first citing *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017); and then citing *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973)) (concluding that electronic monitoring and ankle monitoring amount to custody for habeas purposes)). By November 3, 2026, Respondents shall certify compliance with this order by filing on the docket and specifically noting that Petitioner has been released. The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

November 3, 2026
Brooklyn, New York